**SEAFORD FUNDING LIMITED PARTNERSHIP, a Delaware limited partnership, Barry M. Kotler, M.D., P.A. Retirement Plan, Loss & Miller, P.A. Money Purchase Pension Plan Voluntary Account, F.B.O., Brian B. Loss, Philip Horowitz, M.D., P.A. Profit Sharing Plan, Philip Horowitz, M.D., P.A. Pension Account, Howard C. Brown Defined Benefit Keogh Plan, Paul A. Ceca, Jr., M.D., P.A. Profit Sharing Plan, David B. Nibouar, D.D.S., P.A. Profit Sharing Plan, and Carl P. Mulvenery, M.D., P.A. Pension Fund, Dominic M. Gioffre, D.D.S., P.A. Pension and Profit Sharing Plans and William R. Foster, Sr., Plaintiffs,**

v.

**M & M ASSOCIATES II, L.P., a Pennsylvania Limited Partnership, and Thomas R. Mullen, M.D., Defendants.**

C.A. No. 1598.

Court of Chancery of Delaware,
Sussex County.

Submitted: Jan. 30, 1995.
Decided: April 26, 1995.

Richard E. Berl, Jr. of Berl & Jones, P.A., Georgetown, for Plaintiffs; Michael I. Kotler of Schwartz, Gold, Cohen, Zakarin & Kotler, P.A., Boca Raton, Florida, of counsel.

Craig B. Smith, David A. Jenkins and Michele C. Gott of Smith, Katzenstein & Furlow, Wilmington, for Defendants.

## OPINION

STEELE, Vice–Chancellor.

This is a derivative suit brought by the limited partners of Seaford Funding Limited Partnership ("Seaford Funding") against Thomas R. Mullen, M.D. ("Mullen"), the general partner of Seaford Funding and M & M Associates II, L.P. ("M & M Associates"). Plaintiffs allege: (1) Defendants defaulted on a Promissory Note, Mortgage and Security Agreement; and, (2) Mullen breached his fiduciary duty to the limited partners of Seaford Funding.

Defendants have moved to dismiss this action claiming the Plaintiffs lack standing. After the parties completed briefing on Defendants' Motion to Dismiss, Plaintiffs filed an amended complaint and a Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss. This is the decision on Defendants' Motion to Dismiss after briefing and oral argument.

## I. BACKGROUND

At this stage, the Court will consider all well-plead facts as true. Seaford Funding is a Delaware limited partnership created by Mullen for the purpose of financing M & M Associates' acquisition of real property and the construction and operation of a bowling center, restaurant and lounge near Seaford, Delaware (the "Property"). Mullen is the general partner of Seaford Funding. Mullen also created and serves as the general partner of M & M Associates, a Pennsylvania limited partnership. M & M Associates purchased the Property on December 27, 1985.

Mullen created Nanticoke Partners, Inc. ("Nanticoke Partners"), a Delaware corporation, to operate the business entities at the Property. Nanticoke Partners has an equipment and restaurant equipment lease with M & M Associates. Mullen personally guaranteed the Nanticoke Partners rental payments to M & M Associates.

Mullen created two other companies to provide services to the Property. P.T. Management Company provides maintenance services for the Property. M & M Management, Inc. supervises the lease of the Property's businesses and manages, operates, and maintains the Property.

Seaford Funding and M & M Associates entered into a Loan Agreement ("Loan") dated December 1, 1986. Pursuant to the Loan, Seaford Funding agreed to loan M & M Associates up to $900,000 in return for a promissory note M & M Associates executed on December 1, 1986 (the "Note"). A Mortgage and Security Agreement covering the Property and certain personal property of M & M secured payment of the Note. To date, Seaford Funding has advanced approximately $500,000 of the $900,000.

M & M Associates has not paid the Note installments for five years. As early as April 30, 1987, M & M Associates owed Seaford Funding $480,796. In June 1988, the limited partners of Seaford Funding requested Mullen take action against M & M Associates. Mullen did nothing.

On March 12, 1992, some of the Seaford Funding limited partners wrote Mullen demanding the partnership take action against M & M Associates because it had made no payments since approximately April of 1987. Mullen did nothing.

The Plaintiffs filed this action pursuant to 6 *Del.C.* § 17–1001 to enforce M & M Associates' and Mullen's obligations. Plaintiffs seek the remaining principal balance of $480,796 plus interest due under the Note from M & M Associates. Plaintiffs also seek foreclosure on the mortgage and execution on and sale of the personal property securing the Note and the appointment of a receiver to take possession of the mortgaged property.

Plaintiffs allege Mullen breached his fiduciary duties to Seaford Funding by failing to take action against M & M Associates for nonpayment of the Note installments, despite the limited partners' demands. Plaintiffs further allege Mullen breached his fiduciary duties to the limited partners by failing to create and maintain escrow accounts in accordance with the Loan. Finally, Plaintiffs allege Mullen breached his fiduciary duty to the limited partners by creating and managing P.T. Management Company and M & M Management to the detriment of Seaford

Funding and for failing to account for money collected by these other entities. Plaintiffs' seek compensatory and punitive damages.

## II. CONTENTIONS OF THE PARTIES

Defendants assert Plaintiffs do not have standing to maintain this derivative action. Defendants argue Plaintiffs have failed to allege facts creating a reasonable doubt Mullen acted with due care or upon a good faith belief in rejecting the demand. Defendants also argue Plaintiffs did not make demand on Mullen concerning the escrow account and did not allege why demand would be futile.

Plaintiffs argue they have plead particularized facts creating reasonable doubt Mullen's refusal was a product of the valid exercise of his business judgment. Specifically, Plaintiffs argue Mullen had numerous conflicts of interest which tainted his judgment.

## III. LEGAL STANDARD FOR A MOTION TO DISMISS

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court considers only those matters referred to in the pleadings. *Hart Holding v. Drexel Burnham Lambert*, Del. Ch., 593 A.2d 535, 538 (1991). The Court will consider all well-plead facts to be true and draw all inferences in the light most favorable to the nonmoving party. *Grobow v. Perot*, Del.Supr., 539 A.2d 180, 187 n. 6 (1988). Conclusory allegations will not be accepted as true. *Id.* A complaint will not be dismissed unless it appears to a reasonable degree of certainty the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim. *Rabkin v. Philip A. Hunt Chem. Corp.*, Del.Supr., 498 A.2d 1099, 1104 (1985);

*In re USACafes, L.P. Litig.*, Del.Ch., 600 A.2d 43, 47 (1991).

## IV. THE STATUTORY REQUIRE-MENTS FOR A DERIVATIVE CLAIM

Before limited partners may bring a derivative claim in The Court of Chancery, Delaware law requires the plaintiffs to make a demand on the general partner to bring the action or explain why they made no demand. 6 *Del.C.* § 17–1001 [1]; *Litman v. Prudential–Bache Properties, Inc.*, Del.Ch., 611 A.2d 12, 17 (1992) (*"Litman I"*). For this reason, limited partners in a derivative complaint must allege with particularity the effort, if any, made to secure the action desired from the general partner and the reasons the effort failed or why they chose not to make the effort. 6 *Del.C.* § 17–1003 [2]; *see* Ch.Ct.R. 23.1 [3].

## V. ALL PLAINTIFFS MADE DEMAND

Defendants argue only Plaintiff "Barry M. Kotler, M.D., P.A. Retirement Plan" made pre-suit demand on Mullen by letter dated March 12, 1992. The language of the demand letter sent by Mr. Kotler to Mullen does not support their argument. The demand letter states: "The undersigned represents Barry M. Kotler retirement plan, a limited partner in Seaford Funding Limited Partnership **as well as other limited partners of the limited partnership**." (Compl.Ex. A (emphasis added)). The demand letter also states: "I have been authorized by my **clients** to undertake whatever steps are necessary to protect **their** legal interests." *Id.* (emphasis added). These statements, combined with the fact counsel filed suit purportedly on behalf of the limited

---

1. 6 *Del.C.* § 17–1001 states:

   A limited partner may bring an action in the Court of Chancery in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed.

2. 6 *Del.C.* § 17–1003 states:

   In a derivative action, the complaint shall set forth with particularity the effort, if any, of the

plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort.

3. Court of Chancery Rule 23.1 states, in pertinent part:

   The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

partners, forces me to conclude counsel presented the pre-suit demand letter on behalf of all of the Plaintiffs. Therefore, I will analyze whether Mullen wrongfully refused demand for all Plaintiffs.

## VI. WHETHER CORPORATE DEMAND REFUSED REQUIREMENTS ARE USED IN THE LIMITED PARTNERSHIP CONTEXT

■ Plaintiffs argue the Court should not use the standards and principles created in the corporate context when analyzing whether they have met the "demand refused" requirements. This Court has already ruled corporate standards apply to limited partnerships in the "demand excused" analysis. *Litman v. Prudential–Bache Properties, Inc.*, Del.Ch., C.A. No. 12137, Chandler, V.C. (Jan. 4, 1993) Mem.Op. at 4–5, 1993 WL 5922 (*"Litman II "*). Vice Chancellor Chandler reasoned general partners have control over derivative suits and sometimes general partners must exercise their judgment whether to pursue litigation the interest of the partnership once the general partner receives a demand letter. *Id.* at 5. At times, plaintiffs may find demand on the general partner to be futile. *Id.* at 5–6. Therefore, demand futility issues in the partnership context are the same as in the corporate context. *Id.* at 6.

The statutory test for derivative actions in the partnership context is nearly identical to corporation case law. Sections 17–1001 and 17–1003 do not specifically articulate when a general partner must take action. Nor does the statutory scheme address the consequences of making a demand for action to a general partner with a clear conflict of interest amounting to self-dealing. After receiving a demand, a general partner must exercise business judgment whether to pursue the course of action demanded by the plaintiff. In some situations, plaintiff may find a general partner wrongfully refused to take action. Demand refused issues appear simi-lar in the limited partnership and corporate contexts. Therefore, any analysis of whether plaintiffs have met "demand refused" requirements must at least begin with *Aronson v. Lewis*, Del.Supr., 473 A.2d 805 (1984), and its progeny.

## VII. CASE LAW DEMAND REFUSED REQUIREMENTS

■ The general partner has the responsibility to decide whether to bring a law suit on behalf of the partnership. *Zapata Corp. v. Maldonado*, Del.Supr., 430 A.2d 779, 782 (1981). When limited partners make demand and the general partner refuses to pursue the action after informed consideration and in good faith, the business judgment rule comes into play. *Levine v. Smith*, Del.Supr., 591 A.2d 194, 200 (1991); *Aronson*, 473 A.2d at 813. The plaintiffs' power to maintain the derivative action is terminated by the refusal. *Id.* Therefore, the business judgment rule is of paramount significance in a derivative action. *Aronson*, 473 A.2d at 812.

General partners may not claim the protection of the business judgment rule when appearing on both sides of the transaction or when deriving a personal benefit in the sense of self-dealing. *Id.* at 812. Furthermore, general partners may not use the business judgment rule as a shield if they are not informed of material information reasonably available to them before making a business decision. *Id.*

■ Therefore, reviewing a general partners' refusal of demand under the business judgment rule creates three issues for the Court: (1) whether the general partner acted independently and not self interestedly; (2) whether the general partner reasonably investigated the basis for the proposed litigation; and (3) whether the general partner refused to act in good faith. *See Spiegel v. Buntrock*, Del.Supr., 571 A.2d 767, 777 (1990).[4]

---

**4.** *Spiegel* also states: "By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel*, 571 A.2d at 777. However, as discussed below, common sense demands the concession principle not apply to this case.

## VIII. WHETHER PLAINTIFFS CONCEDED MULLEN'S DISINTERESTEDNESS

Defendants argue Plaintiffs conceded Mullen's independence by making pre-suit demand. It is not disputed the Delaware Supreme Court has ruled, in the corporate context, a shareholder electing to make demand concedes the independence of a majority of the board to respond. *Rales v. Blasband*, Del.Supr., 634 A.2d 927, 935 n. 12 (1993); *Spiegel*, 571 A.2d at 777. The rationale underlying *Rales* does not apply to the facts of this case.

*Aronson* explicitly explains the rationale for the demand requirement:

> By its very nature the derivative action impinges on the managerial freedom of directors. Hence, the demand requirement of Chancery Rule 23.1 exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits. Thus, by promoting this form of alternate dispute resolution, rather than immediate recourse to litigation, the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations.

*Aronson*, 473 A.2d at 812 (footnote omitted). The demand rules assume the existence of an effective dispute resolution mechanism which shareholders concede should be in the hands of a independent and effective board of managers elected to decide corporate policy. Presumably submitting the dispute first to the board, reasoned persons acting in an environment constituting a more practical alternative than the Courts, promotes judicial efficiency. *Spiegel* requires a further leap of faith—that logic as well as judicial economy support the conclusion that submission of the demand for action to the board requires one to conclude the decision making authority is capable of acting independently and without self-interest. At least one would conclude no facts could be put forward to suggest otherwise or the complainants would have sued and pleaded demand futility. In the corporate context, the demand rule is intended to act as a gatekeeper to both encourage extra judicial intra-corporate solutions to internal problems and to bar meritless claims of self-interested decision making. How well this rule functions to encourage resort to the board is a question beyond our responsibility to answer. In all events in the limited partnership context, the doctrine fails to promote judicial efficiency at least when there is a single general partner.

Here the plaintiffs took the most efficient course of action available to them. Mullen is the general partner of two limited partnerships. The sole purpose of one of the limited partnerships is to lend money to the other. Mullen and his wife personally guaranteed the loan with their personal property. Mullen is also in charge of other business entities which manage and maintain the property serving as security for the loan. It is patently obvious the pleadings allege the limited partners were acutely aware Mullen did not attempt to collect the debt owed Seaford Funding because of his interests in the debtor limited partnership and the other business organizations at the time they demanded action. The limited partners, understanding Mullen's self-interested conflict, simply requested Mullen do what he personally obligated himself to do in a way that made sense from a practical point of view. Basically they asked the one individual empowered to act to do so in the obvious best interest of the limited partnership he controlled. This gave Mullen an opportunity to do the right thing under uncontrovertible circumstances. A rule punishing plaintiffs using intrapartnership remedies to avoid litigation flatly and illogically conflicts with any rational view of the concept of judicial efficiency. Parties attempting to avoid rushing to the courthouse should be rewarded, not penalized. A court of equity ought not blindly apply a corporate rule which is premised upon a reasoned vote of a majority of individuals constituting a board of directors, to a one person general partner enveloped in a self-spun web of conflicting interests. There are no Delaware cases extending the innovative corporate concession rule to limited partnerships. I will not do so on these facts.

Therefore, I find Plaintiffs' pre-suit demand should not constitute a concession that

Mullen acted independently in the face of facts uncontrovertedly establishing otherwise.

## IX. WHETHER MULLEN WRONGFULLY REFUSED DEMAND

■ Turning to the analysis of Plaintiffs' Amended Complaint, clearly Plaintiffs have plead with particularity facts demonstrating Mullen's self-dealing and personal interest. Mullen created Seaford Funding for the sole purpose of lending money to M & M Associates for the acquisition of land. Mullen personally controls Seaford Funding and M & M Associates. Mullen also created two other business organizations to maintain and operate the businesses on M & M Associates' property. M & M Associates have not paid installments as they have become due and Mullen has not explained why he has not collected the outstanding debt or made a distribution to the limited partners. The allegations, if proved true, form a reasonable doubt whether Mullen exercised valid business judgment by refusing to take action as demanded by the limited partners. *See, e.g., USACafes,* 600 A.2d 43 (1991). Therefore, I find Plaintiffs have standing to proceed with the derivative action.

## X. PLAINTIFFS' WAIVED THEIR BREACH OF FIDUCIARY DUTY CLAIM BASED ON MULLEN'S FAILURE TO OPEN ESCROW ACCOUNTS

■ Defendants argue Plaintiffs' waived their claim Mullen did not establish escrow accounts in accordance with the Loan agreement because they did not present the escrow account claim when they made demand. Failure to present matters to the general partner when making demand results in a waiver of the claims not presented. *See Grimes v. Donald,* Del.Ch., C.A. No. 13358, Allen, C (Jan. 11, 1995) Mem.Op. at 15, 1995 WL 54441. It is undisputed Plaintiffs made demand on the general partner but did not raise the escrow account claim. Therefore, I find Plaintiffs have waived this claim. The Plaintiffs may remedy this failure by presenting the claim to the general partner for his consideration. *See id.*

## XI. WHETHER PLAINTIFFS KNEW ABOUT CONFLICT OF INTEREST

■ Defendants argue Plaintiffs are precluded from complaining about Mullen's alleged conflict of interest because they knew Mullen to be general partner of both Seaford Funding and M & M Associates before Plaintiffs became limited partners of Seaford Funding. A conflict of interest disclosed in a prospectus or partnership agreement and a plaintiff's acceptance of the terms of the prospectus or Partnership Agreement precludes the plaintiff bringing a derivative claim based on the facts disclosed in these documents. *Litman II, supra,* at 10 n. 4; *see Boxer v. Husky Oil Co.,* Del.Ch., C.A. No. 6261, Hartnett, V.C. (June 28, 1983) Mem.Op. at 15, 1983 WL 17937. If Plaintiffs knew of Mullen's conflicts of interest as disclosed in the Partnership Agreement or the prospectus, this initial acquiescence would preclude Plaintiffs from asserting a breach from these same facts. Proof of these facts suggest plaintiff limited partners understood and invited the risks from which they now suffer. However, Defendants can point to no specific allegations of the complaint supporting their claim "plaintiffs were aware of Dr. Mullen's dual status when they became limited partners of Seaford Funding." Therefore, dismissal of the complaint is not warranted on this basis at this stage of the proceedings.

## XII. CONCLUSION

All Plaintiffs made demand on Mullen by letter dated March 12, 1992. Plaintiffs do not concede Mullen is not self-interested by making demand. Plaintiffs have plead facts leading to the inference, if proved true, that Mullen straddled the transaction between Seaford Funding and M & M Associates and his self-dealing interfered with his judgment to refuse to collect the loan. It is unclear from the current state of the record whether the partnership agreement or the prospectus disclosed Mullen's two roles as general partner of both Seaford Funding and M & M Associates. Therefore, Defendants' Motion

to Dismiss is *denied* as to the breach of fiduciary duty claims regarding the collection of the loan.

Plaintiffs waived their claim Mullen did not establish escrow accounts by not presenting the claim to the general partner when Plaintiffs made demand. Defendants' Motion to Dismiss is *granted* as to the breach of fiduciary duty claim regarding the establishment of escrow accounts. Plaintiffs may cure this mistake by presenting the claim to the general partner if they so choose.

Defendants' Motion to Dismiss is *granted in part* and *denied in part.*