124 F.3d 218
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES CELLULAR INVESTMENT COMPANY OF OKLAHOMA CITY,
INC., an Oklahoma corporation, Plaintiff-Appellee
and Cross-Appellant,
v.
SOUTHWESTERN BELL MOBILE SYSTEMS, INC., a Delaware and
Virginia corporation, Defendant-Appellant and
Cross-Appellee.
 Nos. 96-6140, 96-6146, 96-6294.
 United States Court of Appeals, Tenth Circuit.
 Sept. 17, 1997.
 
 Before TACHA, BALDOCK, and KELLY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 This diversity case involves a dispute over the construction of a limited partnership agreement between the general partner, Southwestern Bell Mobile Systems, Inc. (SBMS) and one of four limited partners, United States Cellular Investment Company of Oklahoma City, Inc. (USC-OKC). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm the district court's judgment.
 
 Background
 
 3
 The Oklahoma City SMSA Limited Partnership (OKC Partnership) was formed among competing applicants to operate a cellular telephone system within the five-county area of the Oklahoma City Metropolitan Statistical Area (Oklahoma City MSA). SBMS was the sole and managing general partner with a 40% interest as a general partner and a 22% interest as a limited partner, for a total interest of 62%. The remaining 38% interest was held by three other limited partners, including USC-OKC with a 14.60% interest.
 
 
 4
 The OKC Limited Partnership Agreement (Agreement) predated the establishment of outlying Rural Service Areas (RSA) for rural cellular service. The Agreement necessarily reflected the uncertainty prevailing before the FCC established the final boundaries for RSAs. The primary issue in this lawsuit is whether SBMS could expand into these rural areas on its own behalf, or whether instead it was obligated to do so on behalf of the limited partnership.
 
 
 5
 The central sections of the Agreement in dispute are §§ 8.8 and 7.2(f). Under Article VIII entitled "Obligations of General Partner," § 8.8 provides:
 
 
 6
 8.8 Cellular Service in Other Areas. Nothing herein shall preclude the General Partner or an Affiliate thereof from providing Cellular Service independently from the Partnership in areas other than the SMSA and adjoining areas. Applications by the General Partner or an Affiliate thereof to provide Cellular Service in areas adjoining the SMSA shall be deemed to be made on behalf of the Partnership pursuant to the terms of Section 7.2(f).
 
 
 7
 Aplt.App. 143, 145.
 
 
 8
 Section 8.8 references § 7.2(f) under Article VII entitled "Rights and Powers of Partnership, General Partner and Limited Partners," and provides that:
 
 
 9
 7.2 Powers of the General Partner. [T]he General Partner hereby is vested with the power to:
 
 
 10
 ...
 
 
 11
 (f) Subject to the provisions of Sections 5.2 and 5.4 herein, apply
 
 
 12
 to the FCC on behalf of the Partnership for permits and licenses to provide Cellular Service in counties contiguous to the SMSA where such contiguous counties and the SMSA have a community of interest and where such expansion appears to be economically justifiable and would result in Cellular Service being provided by the Partnership in a unified area which includes the SMSA and contiguous counties, negotiate on behalf of the Partnership to reach mutually acceptable arrangements with other carriers desiring to provide service in such areas and decide and conduct all matters pertaining to such applications and to the Cellular Service that may result from such applications.
 
 
 13
 Aplt.App. 139-42.
 
 
 14
 Also relevant to the dispute is § 8.1 which provides::
 
 
 15
 8.1 Duty of the General Partner. The General Partner will at all times act in the best interests of the Partnership.
 
 
 16
 Aplt.App. 143.
 
 
 17
 Section 8.8 defines the partnership service area in terms of "the SMSA [that is, the five-county Oklahoma Standard Metropolitan Statistical Area] and adjoining areas," but also provides that an application to provide cellular service in those "adjoining areas" by SBMS would be deemed "made on behalf of the Partnership pursuant to the terms of Section 7.2(f)." Section 7.2(f) appears to restrict the power given to SBMS to expand the area served by the OKC Partnership to "counties contiguous to the SMSA."
 
 
 18
 In 1987, three years after the Agreement was executed, the FCC established the boundaries for three Oklahoma RSAs, RSAs 3, 5 and 9. These RSAs encompass 22 counties, but only 6 counties within these RSAs are "contiguous counties to the SMSA" within the meaning of § 7.2(f). SBMS or the independent partnerships it organized applied for and were awarded construction permits for the three RSAs during 1990.
 
 
 19
 In 1992, USC-OKC filed this lawsuit. In its amended complaint, it alleged that SBMS usurped the rights of USC-OKC to provide cellular service in the three RSAs. Count I sought relief for breach of partnership agreement and count II for breach of fiduciary duty. Although relief was sought for USC-OKC as well as for the Partnership, both parties agree that USC-OKC's action is a direct action on behalf of USC-OKC, not a derivative action on behalf of the Partnership. See USC-OKC's Reply Br. on Cross-Appeal filed Sept. 16, 1996 at 11; SBMS Answer Br. on Cross-Appeal and Reply Br. filed Aug. 30, 1996 at 34 n. 26.
 
 
 20
 At trial, SBMS contended that the term "adjoining areas" in § 8.8 meant (and was limited to) "contiguous counties" in § 7.2(f). According to SBMS, because the three RSAs contained both contiguous and noncontiguous counties, it could not have filed an application on behalf of the OKC Partnership to provide rural cellular service limited to contiguous counties. Accordingly, SBMS argued that it was free to file independent applications for the three RSAs.
 
 
 21
 USC-OKC disagreed that the reference to § 7.2(f) in § 8.8 limited the application of SBMS's obligation to contiguous counties. It argued that § 8.8 allowed SBMS to provide cellular service only in areas other than the SMSA and adjoining areas, and that applications made by SBMS in adjoining areas are deemed to be made on behalf of the OKC Partnership regardless of whether the adjoining areas are contiguous counties or otherwise meet the discretionary powers criteria of § 7.2(f). In the alternative, USC-OKC contended that even if § 7.2(f) limited SBMS's obligation to file on behalf of the OKC Partnership to contiguous counties, SBMS could have submitted partitioned applications for the three RSAs, but did not.
 
 
 22
 After consideration of extrinsic evidence, the district court found that the parties did not intend the reference to "contiguous counties" in § 7.2(f) to limit SBMS's obligations and duties contained in § 8.8, including the duty not to compete with the limited partners in adjoining areas. D. Ct. Finding Nos. 64, 70-74, Aplt.App. 374-77. While SBMS was not required to apply to provide cellular service in adjoining RSAs 3, 5 and 9, once it did so, any interest acquired was deemed on behalf of the OKC Partnership. D. Ct. Finding No. 73; Aplt.App. 377. The district court not only rejected SBMS's interpretation of the Agreement, but also found that even under that interpretation, and contrary to SBMS's conduct, SBMS could have applied to serve the three rural RSAs with partitioning as to contiguous counties. The district court awarded $9,531,543.13 in damages to USC-OKC, based upon its 14.6% interest in the total value of the three RSAs of $65,284,542.
 
 
 23
 On appeal, SBMS contends that (1) § 7.2(f) of the OKC Partnership Agreement is a limitation on the powers of SBMS as a general partner and was intended for the protection of the other partners in the partnership; (2) since the district court found that SBMS could have filed "partitioned applications," USC-OKC's injury was limited to the 6 contiguous counties and it was not entitled to damages for all 22 counties, (3) the damage evidence submitted by USC-OKC was not relevant to its injury, and (4) since USC-OKC failed to submit proof on an essential element of its case, the court of appeals should direct the district court to enter judgment for SBMS. In its cross-appeal, USC-OKC contends that the district court under facts conceded (1) should have awarded punitive damages, and (2) should have imposed a constructive trust. The contentions of the parties are either beside the point or without merit and may be handled with dispatch.
 
 Discussion
 
 24
 We review the district court's factual findings under the deferential clearly erroneous standard and its legal conclusions de novo. See Fed.R.Civ.P. 52(a); Salve Regina College v. Russell, 499 U.S. 225, 239-40 (1991). SBMS does not challenge the basic findings of fact made by the district court, only the scope of their application. Aplt. & Cross-Aplee. Br. at 2. The essence of SBMS's appeal is that the district court erred in calculating damages based upon 22 adjoining counties rather than limiting damages to 6 contiguous counties.
 
 
 25
 SBMS first argues that § 7.2(f) of the OKC Agreement is a limitation on the general partner's power and was intended for the protection of the other limited partners. According to SBMS, the "contiguous county" language was motivated solely by the limited partners' concern that the general partner not be allowed to pursue unlimited expansion of the Partnership's cellular service area and make unlimited "capital calls." The district court found that the language had its genesis in Chickasaw's (another limited partner) desire to limit the discretionary powers of SBMS, to assure that Chickasaw would participate in cellular service within its exchange area and to assure that SBMS could not provide cellular service in Chickasaw's traditional exchange area independently from the OKC Partnership. D. Ct. Finding Nos. 56 & 57, Aplt.App. 371-72. Even if § 7.2(f) limits SBMS's discretionary powers regarding expansion in contiguous counties, the district court plainly found that the provision did not limit SBMS's duties to the OKC Partnership regarding expansion in "adjoining areas." Finding No. 64, 70-74, 151, Aplt.App. 374-77, 404. The district court's construction of the ambiguous provisions in the OKC-Agreement is anchored in its unchallenged findings concerning the intent of the parties; therefore, we must reject SBMS's argument that § 7.2(f) so limited its power to act on behalf of the Partnership.
 
 
 26
 SBMS next argues that since the district court found that SBMS could have filed "partitioned applications," USC-OKC's injury was limited to the 6 contiguous counties and it was not entitled to damages for all 22 counties. SBMS seizes on the district court's finding that it could have filed partitioned applications for the three RSAs. Finding No. 178, Aplt.App. 410. The district court made its finding in response to SBMS's position that its obligation to the partnership extended only to contiguous counties and it was not possible to file an application for an RSA that contained both contiguous and non-contiguous counties. There is no merit to SBMS's argument. SBMS never attempted to file partitioned applications, and when it filed for adjoining areas, such applications were deemed to be made, in their entirety, on behalf of the OKC Partnership. The district court found that SBMS breached the OKC Agreement and its fiduciary duties by usurping partnership opportunities in adjoining counties, not merely contiguous counties. Finding Nos. 151-154; Aplt.App. 404.
 
 
 27
 SBMS also contends that the damage evidence submitted by USC-OKC was not relevant to its injury because it was based on an RSA-wide basis, rather than restricted to contiguous counties. It further contends that because USC-OKC failed to submit appropriate proof on an essential element of its case, damages, we should direct the district court to enter judgment for SBMS.
 
 
 28
 After determining that SBMS breached the OKC Agreement and its fiduciary duties and that such breaches were the proximate cause of USC-OKC's damages, the district court valued the profit interests in Oklahoma RSAs 3, 5 and 9 to the date of trial. Finding No. 198-201; Aplt.App. 421. SBMS's contentions are not tenable in light of the district court's unchallenged finding regarding the parties' intent concerning the relationship between §§ 8.1 and 7.2(f) of the OKC Agreement. Given that finding, SBMS was required to submit applications for RSAs adjoining the Oklahoma City M.S.A. § on behalf of, rather than independently of, the OKC Partnership. USC-OKC's damage evidence provided a satisfactory basis for the district court to award damages.
 
 
 29
 In its cross-appeal, USC-OKC contends that the district court erred in failing to award it punitive damages in accordance with its lengthy proposed findings and conclusions of law on the subject. See Aplt.App. 336-344. Instead, the district court found and concluded that "[t]he evidence does not support an award of punitive damages against SBMS." D. Ct. Finding No. 282, Aplt. App 438. We review the district court's denial of an award of punitive damages for an abuse of discretion. Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir.1992); Wright v. Sheppard, 919 F.2d 665, 672 (11th Cir.1990). We have carefully reviewed the findings of fact that, according to USC-OKC, "not only supports, but also mandates, the imposition of punitive damages against SBMS." Aplee. & Cross-Aplt. Br. at 38. We are not persuaded. The district court's resolution of this issue was well within the bounds of permissible choice, particularly in light of the ambiguity contained in the OKC Agreement.
 
 
 30
 USC-OKC also argues that a constructive trust should be imposed upon SBMS's interests in the RSAs. According to USC-OKC, a constructive trust in the amount of $55,752,998.87 (value of the RSAs less USC-OKC's proportionate share) is necessary in order to prevent the unjust enrichment of SBMS and to deter future misconduct. See Aplee. & Cross-Aplt. Br. at 44-47.
 
 
 31
 A constructive trust would be an appropriate remedy were this a derivative action, however, neither the parties on appeal nor the district court treated it as such. The OKC Partnership was not made a party, and neither party has raised the issue of whether USC-OKC may obtain its proportionate share of the value of the RSAs in a direct action.
 
 
 32
 By way of background, the OKC Partnership is a Delaware limited partnership with a Delaware choice-of-law provision. Aplt.App. 165. Delaware law allows a limited partner to bring a derivative action after demand upon the general partner or without demand if it would be futile. See Del.Code Ann. tit. 6., § 17-1001 (1996); Seaford Funding Ltd. Partnership, 672 A.2d 66, 69 (Del. Ch.1995). Generally, whether an action is direct or derivative depends upon whether the injury alleged is independent of the injury suffered by the limited partnership. See Litman v. Prudential-Bache Properties, 611 A.2d 12, 15 (Del. Ch.1992). Where the claim belongs to the partnership, "[l]imited partners ordinarily cannot enforce their proportional interest in a partnership claim as their individual claim." See 4 Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership, § 15.04(g) at 15:34-35 (1996).
 
 
 33
 At the same time, limited partners can bring a direct action when the injury can be differentiated from that suffered by the other partners. See Litman, 611 A.2d at 15. Courts have allowed claims for (1) an accounting, (2) fiduciary breach, and (3) breach of the partnership agreement to proceed as individual claims in varying circumstances, id. § 15.04(h), at 15:35-37 (discussing claims that may be either individual or partnership); HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1195 (3rd Cir.1996) (stating that breach of a partnership agreement "has been held to constitute an individual as well as a partnership claim"); see also Bromberg & Ribstein on Partnership, § 15.04(f), at 15:31-33 (discussing individual claims), particularly where the general partner has engaged in self-dealing and a direct action is necessary to protect a limited partner's investment, id. §§ 15.04(c), at 15:27 ("If the general partner(s) have a conflict of interest in enforcing a partnership right, the courts are likely to allow one or more limited partners to enforce it by, for example, direct suit ...."), at 15:29 ("Extreme situations ... may justify a single limited partner's action."); 15.01(c)(2), at 15:10 (discussing reasons for allowing a limited partner to enforce partnership rights). In Jaffe v. Harris, 338 N.W.2d 228 (Mich.App.1983), rev'd in part, appeal denied, 355 N.W.2d 617 (Mich.1984), limited partners with an eight-percent interest obtained a judgment for their allocable share of unauthorized management fees and withdrawals taken by the general partner, notwithstanding a later appellate ruling that allowed them a derivative action. Id. at 230-31.
 
 
 34
 Regardless, SBMS has waived any argument that USC-OKC could not proceed with its claims in a direct action by failing to assert such an argument. We will not allow USC-OKC to achieve the result of a derivative action (a constructive trust imposed for the benefit of the limited partnership and its members) without having instituted a derivative action and naming the limited partnership.
 
 
 35
 Without benefit of briefing, the dissent concludes that the OKC Partnership is an indispensable party and that this action must be dismissed for want of subject matter jurisdiction. The dissent's conclusion is based on the incorrect premise that only derivative claims are involved in this lawsuit. The distinction between direct and derivative actions is often difficult to apply and the same set of facts may result in direct and derivative claims. Grimes v. Donald, 673 A.2d 1207, 1212-13 (Del.1996). We do not read the amended complaint, the final pretrial order, or the district court's analysis as precluding direct relief. See Fed.R.Civ.P. 8(e) (allowing multiple theories). For example, the OKC Agreement specifically allows each limited partner "a formal account of partnership affairs whenever circumstances render it just and reasonable," Aplt.App. 142, and OKC-USC sought an accounting as well as damages. Moreover, given that SBMS owns 62% of the limited partnership and has not been injured by its conduct (indeed, it has profited), the non-SBMS limited partners including USC-OKC have an injury that is separate and distinct from SBMS and the limited partnership.
 
 
 36
 Plainly, SBMS has waived any argument that the OKC Partnership is a necessary party. See State Farm Mut. Auto Ins. Co. v. Mid-Continent Cas. Co., 518 F.2d 292, 294 (10th Cir.1975) ("No objection was made that Garton was a necessary party under Rule 19(a), so that objection is waived.). Thus, the statement that "[w]e must protect the interests of an absent necessary party, and have a duty to ensure that the best possible parties litigate this suit," Dissent at 5, is not accurate. Only if the OKC Partnership is an indispensable party would dismissal for lack of jurisdiction be appropriate. To the extent that the OKC is not a necessary party, the indispensability inquiry need not be considered. State Farm, 518 F.2d at 294.
 
 
 37
 Although a court may raise the indispensable party issue sua sponte, we have no need to do so. The district court did not commit plain error in awarding relief to USC-OKC on a direct basis. See Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1516 (10th Cir.1984) (discussing strictness of plain error review), aff'd, 472 U.S. 585 (1985). With relief awarded on direct claims against the sole general partner of the OKC Partnership, we are not required to consider the interests of absent parties.
 
 
 38
 AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, and order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3