Michael L. WHALEN, a Limited Partner in The Connelly Group, L.P., on Behalf of The Connelly Group, L.P., Appellant,

v.

John E. CONNELLY: The Connelly Group, L.P.; Della III, Inc.; Della IV, Inc.; President Riverboat Casinos, Inc.; PRC Iowa; PRC Holding; PRC Management; International Game Technology; Iowa Riverboat Corporation; PRC–Mississippi; PRC–Missouri; Edward S. Ellers; and Ralph J. Vaclavik, Appellees.

No. 97–1452.

Supreme Court of Iowa.

April 28, 1999.

Lawrence L. Marcucci and Michael A. Dee of Shearer, Templer & Pingel, West Des Moines, for appellant.

W. Stanley Walch and Lawrence C. Friedman of Thompson Coburn, St. Louis, Mo., and R. Richard Bittner and Jeffrey S. Bittner of Carlin, Hellstrom & Bittner, Davenport, for appellees Connelly, et al.

Kasey W. Kincaid of Faegre & Benson, LLP, Des Moines, for appellees International Game Technology and Iowa Riverboat Corporation.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

This case involves further proceedings concerning a dispute between plaintiff, Michael L. Whalen, and his business partners concerning operation of a riverboat casino in Davenport, Iowa. In a prior decision regarding this matter, *see Whalen v. Connelly*, 545 N.W.2d 284 (Iowa 1996) (*Whalen I*), we con-

cluded that the district court properly dismissed on summary judgment Whalen's claims brought in his individual capacity against his business partners for alleged breach of partnership agreements and fiduciary duties.

In the present case, Whalen, a limited partner in the limited partnership of The Connelly Group, L.P., brought a derivative action against his general partner in the riverboat/casino venture, PRC–Iowa, Inc., asserting that PRC–Iowa breached fiduciary duties in the course of operating the limited partnership, The Connelly Group, L.P. Whalen also named as defendants, John E. Connelly, Edward S. Ellers, The Connelly Group, L.P., Della III, Inc., Della IV, Inc., PRC Holding, PRC Management, PRC–Mississippi, PRC–Missouri, and Ralph J. Vaclavik. We will collectively refer to those parties throughout both appeals as defendants or TCG unless otherwise indicated because they, along with PRC–Iowa, Inc., are Whalen's main present adversaries. Whalen also named as additional defendants International Game Technology (IGT) and Iowa Riverboat Corporation (IRC).

The district court dismissed Whalen's derivative claims on all defendants' motions for summary judgment. Upon appeal by plaintiff Whalen, we affirm.

### I. Background facts and proceedings.

A detailed summary of the background facts concerning Whalen's dispute with defendants can be found in *Whalen I*. *See* 545 N.W.2d at 287–290. We will only discuss the relevant facts of *Whalen I* that pertain to the case presently before us.

At the outset, we point out that section 17.3 of the limited partnership agreement which governs operation of The Connelly Group, L.P., entered into by Whalen, PRC–Iowa and several defendants, provides that

Delaware law is the law governing the partnership agreement. Thus, as agreed by the parties, Whalen's claims in the present action are governed by Delaware law.

### A. *Whalen I.*

The Connelly Group, L.P., hereinafter referred to as TCG, is a Delaware limited partnership, created in 1990, that owns and operates a riverboat casino in Davenport, Iowa. Plaintiff, Michael L. Whalen, is the sole limited partner in TCG, with five percent ownership. Whalen's present general partner in TCG is PRC–Iowa, Inc., a Delaware corporation with ninety-five percent ownership. PRC–Iowa has two board of director members, John E. Connelly, and Edward S. Ellers. Both are named defendants in the case and appeal presently before us. PRC–Iowa, in turn, is a wholly-owned subsidiary of President Riverboat Casinos, Inc. (PCI), a Delaware corporation.

The events leading to our decision in *Whalen I* began in May 1993 when Whalen filed a petition at law in district court, asserting, inter alia, claims of mismanagement and diversion of partnership assets, breaches of oral and written agreements, and breach of fiduciary duties.[1] *See* 545 N.W.2d at 290. Whalen's claims were made in his individual capacity, not as a limited partner and not on behalf of the partnership as a whole.

Defendants filed a motion for summary judgment, asserting that Whalen's breach of fiduciary duty claim was derivative in nature and thus could not be asserted by Whalen acting in his individual capacity. *See id.* at 292. In response, Whalen sought leave to amend his petition to allege certain claims as derivative in nature and on behalf of the partnership.

The district court denied Whalen's motion to amend and dismissed certain claims as

---

1. The petition in *Whalen I* named as defendants, John E. Connelly, Edward S. Ellers, The Connelly Group (TCG), a limited partnership, Della III, Inc., President Riverboat Casinos, Inc., (PCI), International Game Technology (IGT), Iowa Riverboat Corporation (IRC), Klehr, Harrison, Harvey, Branzberg and Ellers, Partnership. PRC–Iowa and Ralph J. Vaclavik were not parties to the proceedings in *Whalen I*.

Defendant IRC is a wholly-owned subsidiary of IGT. IRC was a general partner, along with Della III, of TCG until December 1992. As a result of an initial public offering, PCI, through PRC–Iowa and other of its subsidiaries, bought out IRC's interest in TCG.

derivative in nature and not belonging to Whalen individually. *See id.* at 290.

Whalen's remaining claims, the substance of which are not relevant to this appeal, were dismissed on defendants' motion for a directed verdict during trial. *See id.*

Whalen filed his notice of appeal in *Whalen I* on November 18, 1994.

### B. *Whalen II*—The present dispute.

The events giving rise to the present dispute, which we will refer to as *Whalen II*, were initiated on November 18, 1994. On that date, Whalen filed his notice of appeal concerning the district court's decision that certain of his claims were derivative, and Whalen also sent a written demand to the board of PRC–Iowa, the general partner of TCG, asking that it pursue various claims regarding diversion of assets and breach of fiduciary duties by TCG's officers and directors.[2] At that time, the board of directors of PRC–Iowa consisted of Connelly and Ellers.

On November 30, 1994, PRC–Iowa, through its attorney, informed Whalen that it intended to appoint a special committee to investigate the claims asserted in the demand letter.

Later, Whalen was informed by letter that a special committee, consisting of Floyd R. Ganassi and William C. Nelson, had been appointed to review the claims asserted in the demand letter. The letter explained that Ganassi and Nelson "are directors, but not officers or employees" of PCI, the parent company of PRC–Iowa and that the special committee had retained outside counsel to assist with the investigation.[3]

Before the special committee completed its investigation, and while *Whalen I* was pending before our court, Whalen filed a petition in equity in district court on May 9, 1995, asserting a derivative claim on behalf of the partnership.

On June 6, 1995, the attorneys for the special committee submitted their report to the special committee. The report stated that upon completion of their investigation, the attorneys recommended that PRC–Iowa not pursue litigation. A memorandum from the special committee concerning the report then was addressed to the "Board of Directors President Riverboat Casinos–Iowa, Inc.," stating the committee had concluded "there is no legal basis for the company to institute any proceeding against the various entities, officers and directors suggested as possible defendants in Mr. Whalen's demand letter."

On June 21, the board of directors of PRC–Iowa voted to adopt the findings and recommendations of the special committee and decided not to pursue litigation concerning the claims asserted by Whalen in the demand letter.

On June 26, Whalen's counsel received a letter from Ganassi indicating that the special committee had completed its investigation and that the board of directors of PRC–Iowa, Inc. had accepted the committee's conclusion that PRC–Iowa should take no action concerning the claims raised in the demand letter.

On March 20, 1996, we issued our decision in *Whalen I*. *See* 545 N.W.2d 284. We affirmed the district court's decision that Whalen's claims were derivative in nature "because Whalen was not injured 'directly or independently' of the partnership." *Id.* at 292 (quoting *Litman v. Prudential–Bache Properties*, 611 A.2d 12, 15–16 (Del.Ch.1992)). We stated that by failing to make a demand and by failing to plead his failure to do so, Whalen did not comply with the requirements of Delaware law and thus lacked

---

**2.** The letter demanded that PRC–Iowa, as the general partner of TCG, bring legal action on behalf of TCG based on four claims:

a) Improper payment of a four percent management fee by TCG to other entities;
b) Improper payment of thirteen percent interest on certain notes and subordinated debentures of TCG to PRC Holding;

c) Diverting TCG's tangible and intangible assets; and
d) Usurping corporate opportunities.

**3.** Nelson was president of Boatmens' First National Bank of Kansas City, and Ganassi was president of FRG Group, a Pittsburgh company that manufactures laboratory test equipment and operates a satellite uplink.

standing to bring his claims. *Whalen I*, 545 N.W.2d at 293.

After our decision in *Whalen I*, the district court lifted a prior stay and matters concerning Whalen's derivative claim proceeded in district court.

Defendants and Whalen eventually filed cross-motions for summary judgment.

After hearing, the district court entered two rulings; one overruling Whalen's motion for summary judgment and one granting defendants' motions for summary judgment.

With respect to plaintiff's motion, the court concluded that Whalen was not entitled to summary judgment on his contention that a pre-suit demand would be futile. The district court concluded that pursuant to Delaware law, Whalen conceded the independence and disinterest of the general partner PRC–Iowa by making the demand on PRC–Iowa on November 18, 1994.

With respect to defendants' motions, the court concluded that there was no genuine issue of material fact concerning whether the special committee reasonably investigated the allegations made in Whalen's demand letter and whether the PRC–Iowa board acted in good faith upon the recommendation of the special committee. The court concluded that Delaware law allows appointment of a special committee and that the limited partnership agreement impliedly gave PRC–Iowa the authority to appoint a special committee.

Whalen appeals, asserting that the district court erred in applying the applicable Delaware law.

## II. Standard of review.

 Our review of a grant or denial of summary judgment is for correction of errors at law. Iowa R.App. P. 4; *accord Gabrilson v. Flynn*, 554 N.W.2d 267, 270 (Iowa 1996). Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *see Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 201 (Iowa 1997). To determine whether there is a genuine issue of material fact, the court must examine the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 237(c). The record here consists of the pleadings, affidavits and exhibits. We review the record in the light most favorable to the party opposing summary judgment; in this sense, we consider a motion for summary judgment as we would a motion for directed verdict. *See Dickerson v. Mertz*, 547 N.W.2d 208, 212 (Iowa 1996). Under this standard, summary judgment is inappropriate if reasonable minds would differ on how the issue should be resolved. *Id.*

## III. Did the district court correctly apply Delaware law in concluding that PRC–Iowa properly refused Whalen's demand?

Whalen contends the district court erred in applying applicable Delaware law in concluding that PRC–Iowa properly refused Whalen's demand to pursue litigation concerning the claims in Whalen's demand letter.

### A. Background law regarding judicial review of demand refused cases under the business judgment rule.

Delaware courts, by analogy, have applied the rules concerning demand refused cases in the corporate context to a derivative action brought by a limited partner in partnership cases. *See Seaford Funding Ltd. Partnership v. M & M Assocs.*, 672 A.2d 66, 70 (Del.Ch.1995) (noting that "demand refused issues appear similar in the limited partnership and corporate contexts"); Martin I. Lubaroff and Paul M. Altman, *Delaware Limited Partnerships* § 10.3, at 10–10 (1995 & Supp.1999) [hereinafter Lubaroff and Altman]. Thus, for purposes of ruling on this appeal, we will assume that corporate law standards governing demand refused cases are likewise applicable to Whalen's derivative action against TCG, unless doing so appears contrary to Delaware law.

 A limited partner may file a derivative action to redress an alleged harm to the partnership. *See Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del.1990) (discussing rule in corporate context). In effect, a derivative action is a challenge to a board of directors' managerial power. *See id.* Because a deriv-

ative action " 'inherently impinges upon the directors' power to manage the affairs of the corporation the law imposes certain prerequisites on a stockholder's right to sue derivatively.' " *Id.* (quoting *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988)). Delaware law thus requires that before pursuing a derivative action in court on behalf of the partnership, the limited partner must first exhaust intrapartnership remedies by making a demand on the general partner or plead with particularity why demand was excused. *See Seaford Funding*, 672 A.2d at 70–71. The demand requirement under Delaware law is therefore essentially a standing requirement for purposes of maintaining a derivative suit. *See Levine v. Smith*, 591 A.2d 194, 200 (Del.1991).

On this subject, Delaware Code Annotated title 6, section 17–1001 (1993) states:

A limited partner may bring an action in the Court of Chancery in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed.[4]

Delaware law also requires that the complaint—the equivalent of a petition under Iowa law—in a derivative action "must allege with particularity the effort, if any, made to secure the action desired from the general partner and the reasons the effort failed or why they chose not to make the effort."[5] *Seaford Funding*, 672 A.2d at 69; (citing Del.Code Ann. tit. 6, § 17–1003).

If a demand is made, the shareholder has spent one "arrow" in the "quiver," that is, the right to claim that demand is *excused.* *Grimes v. Donald*, 673 A.2d 1207, 1218–19 (Del.1996); *see also Levine*, 591 A.2d at 212 (discussing the different legal standards applicable to demand refused and demand ex-

cused/demand futility cases). The shareholder does not, by making demand, waive the right to claim that demand has been wrongfully *refused.* *Grimes*, 673 A.2d at 1219. These rules clearly dispose of Whalen's contention that the district court erred in concluding that by making his written demand on the board of PRC–Iowa, he conceded that demand would not be futile.

 Once a demand is received, "[t]he general partner has the responsibility to decide whether to bring the law suit on behalf of the partnership," *Seaford Funding*, 672 A.2d at 70, and "must exercise *business judgment* whether to pursue the course of action demanded by the plaintiff." *Id.* (emphasis added). A plaintiff's power to maintain a derivative action is terminated by the general partner's proper refusal to take the demanded action. *See id; see also Levine*, 591 A.2d at 212 (shareholder's standing to exercise "legal managerial power" and to assert derivative claim hinges upon shareholder's ability to establish that board's rejection of shareholder's demand was wrongful). Delaware statutory law, however, does not articulate when a general partner must take action and does not "address the consequences of making a demand for action to a general partner with a clear conflict of interest amounting to self-dealing." *Seaford Funding*, 672 A.2d at 70.

 When a general partner refuses a limited partner's demand, in order for the plaintiff-limited partner's derivative action to go forward, the plaintiff "must allege with particularity facts that create a reasonable doubt that the [ ] board of directors wrongfully refused the demand." *Scattered Corp. v. Chicago Stock Exch. Inc.*, 701 A.2d 70, 73 (Del.1997) (discussing demand refused standards in corporate context) (citations omitted). In determining whether a demand was wrongfully refused, a court reviews the deci-

---

**4.** Delaware limited partnership law is based on the Revised Uniform Limited Partnership Act. *See* 59A Am.Jur.2d *Partnership* § 1233, at 849 (1987).

**5.** Chancery Court Rule 23.1 states in pertinent part:

The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to

obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

*See Seaford Funding*, 672 A.2d at 69 n. 3. Delaware Chancery Court Rule 23.1 is the equivalent to Federal Rule of Civil Procedure 23.1 regarding derivative actions by shareholders.

sion according to the traditional business judgment rule. *Seaford Funding,* 672 A.2d at 70. "The business judgment rule is a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Spiegel,* 571 A.2d at 774.[6] "The burden is on the party challenging the decision to establish facts rebutting the presumption." *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984).

■■■ Thus, judicial review of a board's refusal of a demand under the business judgment rule creates three issues for the court:

(1) whether the general partner acted independently and not self interestedly;

(2) whether the general partner reasonably investigated the basis for the proposed litigation; and

(3) whether the general partner refused to act in good faith.

*Seaford Funding,* 672 A.2d at 70; *see also Spiegel,* 571 A.2d at 777.

■■■ When applying the business judgment rule to determine whether a board properly refused a demand, the court does not examine the merits of the alleged wrongdoing. As the Delaware supreme court has said:

The same standard of judicial review is applicable when a board delegates authority to respond to a demand to a special litigation committee. The issues are solely the good faith and the reasonableness of the committee's investigation.... "The ultimate conclusion of the [special litigation] committee ... is *not* subject to judicial review." ... *Judicial review of the merits of a special litigation committee's decision* to refuse a demand *is limited* to those cases where demand upon the board of directors is *excused* and the board has decided to regain control of litigation

through the use of an independent special litigation committee.

*Spiegel,* 571 A.2d at 778 (emphasis added) (citations omitted); *accord RCM Securities Fund, Inc. v. Stanton,* 928 F.2d 1318, 1328 (2d. Cir.1991) ("Once a demand is made, however, the challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit.").

## B. Did the PRC–Iowa board act independently?

### 1. Background law regarding independence.

In ruling that PRC–Iowa properly refused Whalen's demand, the district court stated that, pursuant to Delaware law, Whalen conceded the independence and disinterest of the board by making demand on the PRC–Iowa board. Whalen asserts this was error.

■■■ Under Delaware corporations law, a shareholder who elects to make a demand upon the board of directors concedes or waives the right to challenge the independence of a majority of the board to respond to the demand. *See Seaford Funding,* 672 A.2d at 71; *Spiegel,* 571 A.2d at 777. This rule is sometimes referred to as the "corporate concession" rule. *See Seaford Funding,* 672 A.2d at 71.

In *Seaford Funding* the Delaware court of chancery refused to apply the corporate concession rule to a limited partner's derivative action against the general partner, a corporation. *See id.* at 71–72. The chancery court noted that the demand requirement promotes judicial efficiency by forcing a stockholder to exhaust its intra-corporate remedies, encourages intra-corporate solutions to internal problems and bars meritless claims of self-interested decision making. *See id.* The court reasoned, however, that the demand requirement, as applied to the facts in

---

**6.** The availability of the business judgment rule to a general partner's refusal of a demand is not absolute. As one court has said:

General partners may not claim the protection of the business judgment rule when appearing on both sides of the transaction or when deriving a personal benefit in the sense

of self-dealing.... Furthermore, general partners may not use the business judgment rule as a shield if they are not informed of material information reasonably available to them before making a business decision.

*Seaford Funding,* 672 A.2d at 70 (citations omitted).

*Seaford Funding,* "fails to promote judicial efficiency at least when there is a single general partner" that is "enveloped in a self-spun web of conflicting interests." *Id.* The court thus concluded that the limited partners' pre-suit demand did not constitute a concession that the general partner acted independently. *Id.* at 72.

Whalen relies on *Seaford Funding* as support for his claim that he did not concede the independence or disinterest of the board by making pre-suit demand.

There appear to be no later Delaware cases discussing *Seaford Funding* and its statement concerning application of the corporate concession rule to limited partnerships. One commentator, however, has stated that the court of chancery's holding in *Seaford Funding* "may be limited to its specific facts and, at least where a limited partnership has multiple general partners or a single general partner that is a business entity such as a corporation, the corporate analogy of concession of independence when demand is made may be applied to limited partnerships in proper circumstances." Lubaroff and Altman, § 10.3, at 10–12.

In *Scattered Corp. v. Chicago Stock Exchange,* a case decided after *Seaford Funding,* the Delaware supreme court commented on whether making a demand on a board of directors concedes independence of the board in derivative suits. *See* 701 A.2d at 74–75.[7] *Scattered Corp.* involved a stockholder derivative suit against the Chicago Stock Exchange of which plaintiffs, one a corporation and the other an individual, were members. *Id.* at 71. Plaintiffs made pre-suit demand upon the Board of Governors of the Exchange, alleging various misdeeds by board members. *Id.*

In response to the demand, an executive committee of the board appointed a special committee consisting of past and current board members to investigate the allegations made in plaintiffs' demand. *Id.* The special committee retained independent counsel to assist it in the investigation. *Id.* Upon completion of its investigation, the special committee recommended that no further action be taken concerning plaintiffs' demand and the executive committee adopted the special committee's recommendation. *Id.* at 71–72.

After plaintiffs filed a derivative action against the board, the court of chancery granted defendants' motions to dismiss, holding that plaintiffs' complaint failed to plead with particularity facts sufficient to create a reasonable doubt that the executive committee of the board had properly refused plaintiffs' pre-suit demand. *Id.* at 72. The court of chancery also stated that, by making a demand on the board, plaintiffs conceded the disinterestedness of both the full board and the executive committee. *Id.* at 74.

On appeal, plaintiffs argued that the court of chancery erred in concluding that a demand on an independent board of directors concedes the independence of an executive committee of the board. Plaintiffs also argued that it was improper for the executive committee, instead of the full board, to act on thé recommendation of the special committee to refuse the demand.

At the beginning of the opinion, the Delaware supreme court stated:

> [W]e explicate the settled legal principles as they apply to these specific facts, holding that the making of a demand *waives only* any contention that the board was *incapable of acting on the demand.* A demand *does not preclude a plaintiff from alleging* with particularity facts creating a reason to doubt *that a special committee in investigating the demand or the executive committee of the board in acting on the demand acted independently and in good faith or conducted a reasonable investigation.*

*Id.* at 71 (emphasis added). Later in the opinion, the court stated:

> In a derivative action involving refusal of a demand, any alleged bias or self-interest

---

7. Although *Scattered Corp.* was decided on September 4, 1997, and revised on October 22, 1997, after the district court's ruling sustaining defendants' summary judgment motions was entered (July 17, 1997), we believe it appropriate to consider the principles set forth in *Scattered Corp.* in reviewing the judgment of the district court that sustained defendants' motions for summary judgment.

on the part of *the board or a committee authorized to act on that demand* should become part of the court's inquiry into whether the *board or committee* acted independently and in good faith, or whether it concluded a reasonable investigation.

*Id.* at 75 (emphasis added).

Applying these principles, the Delaware supreme court affirmed the court of chancery's decision that plaintiffs failed to allege with particularity facts creating a reasonable doubt concerning whether the executive committee acted independently or was disinterested, *see id.*, or whether the investigation of the demand was reasonable and conducted in good faith. *Id.* at 77. The court noted that the board appointed the executive committee pursuant to Delaware Code Annotated title 8, section 141(c), which permits a board of directors to pass a resolution designating one or more committees that may exercise all the powers and authority of the board of directors in the management of the business and affairs of the corporation. *Id.* at 75. In doing so, the court rejected plaintiffs' contention that the full board, by beginning an investigation and by appointing the special committee, reserved to itself the job of making an informed decision on the demand and thus only the board, not the executive committee, had the authority to reject plaintiffs' demand. *Id.* at 76. The court also rejected plaintiffs' contention that the dispute as to which body appointed the special committee, the full board or the executive committee, raised a strong inference that the executive committee was trying to protect committee members who were named as wrongdoers in the demand. *Id.* at 77.

### 2. Application of law to facts.

■■■ We interpret the above-quoted statements from *Scattered Corp.* to mean that a pre-suit demand by a limited partner, to the general partner, in a derivative suit waives any contention that the general partner was *incapable* of acting on the demand. Conversely, making demand assumes that the general partner is *capable* of acting on the demand. We understand the phrase "*capable* of acting" on the demand to mean that the general partner's board could properly appoint a special committee to investigate the demand and make recommendations to the board of the general partner. Additionally, the statements in *Scattered Corp.* that "any alleged bias or self-interest on the part of the board or a committee authorized to act on that demand should become part of the court's inquiry into whether the board or committee acted independently and in good faith, or whether it conducted a reasonable investigation," *see id.* at 75, to mean that when a special committee is appointed, the inquiry under the business judgment rule focuses on the independence of the committee because that is the body that conducts the investigation. The board then decides whether to adopt the findings of the special committee. In effect, the board and committee are treated as one and the same.

■■■ Applying these principles, we conclude that the PRC–Iowa board properly and lawfully appointed the special committee to investigate Whalen's demand. Authority supporting appointment of the special committee by the PRC–Iowa board is found in section 8.2 of the Amended and Restated Agreement of Limited Partnership of TCG which states in pertinent part:

[T]he General Partners shall have the exclusive right to manage the business of the Partnership and are hereby authorized to take any action of any kind and to do anything and everything they deem necessary with respect thereto.

We believe that the language of section 8.2 of the partnership agreement is sufficiently broad to include the authority of the board to appoint a special committee to investigate a demand made by a limited partner.

Additional authority supporting appointment of the committee is found in Delaware Code Annotated title 6, section 17–403(c) which states in pertinent part:

(c) Unless otherwise provided in the partnership agreement, a general partner of a limited partnership has the power and authority to delegate to 1 or more other persons the general partner's rights and powers to manage and control the business and affairs of the limited partnership, including to delegate to agents, officers and

employees of the general partner or the limited partnership, and to delegate by a management agreement or another agreement with, or otherwise to, other persons. Unless otherwise provided in the partnership agreement, such delegation by a general partner of a limited partnership shall not cause the general partner to cease to be a general partner of the limited partnership.[8]

*See also* Del.Code Ann. tit. 6, § 1518 (stating that a partner's rights and duties are subject to "any agreement between them").

Pursuant to section 8.2 of the partnership agreement and Delaware Code Annotated title 6, section 17–403(c), the board of PRC–Iowa appointed a special committee of non-board members of the general partner. The special committee in turn appointed independent counsel which then conducted an extensive investigation of all evidence presented by plaintiff Whalen. Upon completion of its investigation, the special committee completed a report and recommended to PRC–Iowa's board that the allegations made in Whalen's demand had no merit. Based on this recommendation, the PRC–Iowa board was capable of, and did, deny Whalen's demand.

The district court found that the special committee acted independently of the PRC–Iowa board, acted in good faith, and conducted a reasonable investigation. Based on the special committee's report, the court further concluded that PRC–Iowa acted with proper business judgment in following the special committee's recommendation and denied Whalen's demand.

The court rejected Whalen's argument that defendants Connelly and Ellers stand on both sides of the transactions that caused injury to the partnership. The district court stated:

[t]he transactions Plaintiff complains about, however, were mediated through corporations which were either affiliates of Defendant Connelly or of which Defendant Ellers was an officer and/or a director. The Court therefore finds that the appoint-

ment of Mr. Ganassi and Mr. Nelson, completely independent directors not beholden to John Connelly or Edward Ellers, and not affiliates of either of them, was entirely appropriate in this case, and serves to insulate the directors of PRC–Iowa, Inc., from any claim that they are not independent or free of self interest. The Court therefore finds that when Plaintiff made his demand upon PRC–Iowa, Inc., he conceded the independence of the directors of PRC–Iowa, Inc.

By making these statements, the court, in effect, examined whether the special committee acted independently.

■ We also believe it was appropriate for Connelly and Ellers, as directors of the PRC–Iowa board, to appoint a special committee given the fact that Whalen had sued Connelly and Ellers in *Whalen I*. We also agree with the district court's decision that special committee members Ganassi and Nelson were independent directors not beholden to Connelly or Ellers and thus were appropriate and disinterested persons to investigate the allegations made in Whalen's demand letter.

Finally, we find no merit in Whalen's contention that the board of PRC–Iowa somehow abdicated its authority or responsibility as general partner by allowing PCI to appoint the special committee. Instead, the record shows that PRC–Iowa appointed the special committee. The record also shows that the PRC–Iowa board decided at a meeting held June 21, 1995, to adopt the findings and recommendations of the special committee. This shows that the PRC–Iowa board made the ultimate decision concerning whether to pursue the claims made in Whalen's demand letter.

In summary, we conclude that the district court properly found that the special committee was properly and lawfully appointed. Additionally, even though the district court stated that Whalen conceded the independence of the PRC–Iowa board by making a demand, we believe the above discussion

---

**8.** According to one commentator, Delaware Code Annotated title 6, section 17–403(c) was amended "to address the delegation of management rights by a general partner of a Delaware limited partnership." *See* Lubaroff and Altman, § 10.2, at 10–8.

demonstrates that the district court also proceeded to adequately evaluate whether the board, acting through the special committee, was sufficiently independent. We thus need not decide as a matter of law whether, under Delaware law, the corporate concession rule applies to Whalen's derivative action.

### C. Was the investigation reasonable and did the PRC–Iowa board act in good faith?

Whalen also challenges the district court's conclusion that the PRC–Iowa board acted in good faith and conducted a reasonable investigation concerning the claims made in Whalen's demand letter.

██ Upon our review, we conclude that the district court properly determined that the PRC–Iowa board, based on the special committee's report, conducted a reasonable investigation of the claims made in Whalen's demand letter and acted in good faith in deciding not to pursue those claims.

In concluding that no genuine issue of material fact existed regarding whether the PRC–Iowa board conducted a reasonable investigation and acted in good faith concerning the allegations in Whalen's demand letter, the district court stated:

> The Plaintiff here has not shown particularized facts creating a reasonable doubt that the investigation was not conducted reasonably. All of the evidence presented, including the report of the Special Committee and the documents attached to that report, show that the investigation was conducted reasonably and in good faith. The Special Committee members had not been members of the board of directors of PRC–Iowa, Inc., nor involved with any of the other corporations until after the IPO [initial public offering of PCI stock]. This Special Committee hired separate, unrelated outside counsel to aid in the investigation. The recommendation of the Special Committee shows that it was made after an informed consideration of all pertinent facts. That recommendation, accepted and followed by the board of PRC–Iowa, Inc., is a business judgment which is approved by the Court. There are no facts shown nor any inference raised which will prevent

a trier of fact from being firmly convinced that the investigation was conducted reasonably, in good faith, and that the refusal of the demand was made after an informed consideration, in good faith.

We believe that the district court's statements appropriately confirm that the special committee acted in good faith and conducted a reasonable investigation in refusing to act on Whalen's demand and we adopt them as our own. We affirm the judgment of the district court on this issue.

### IV. Summary.

The district court concluded, and we agree, that no genuine issue of material fact existed as to the independence or disinterest of the PRC–Iowa board, acting through the special committee, or whether PRC–Iowa conducted a reasonable investigation and acted in good faith in refusing Whalen's demand. Thus, the refusal of Whalen's demand was proper. This terminates Whalen's ability to pursue his derivative claim. *See Seaford Funding,* 672 A.2d at 70 (limited partner's power to maintain derivative action is terminated by general partner's refusal to respond to a demand).

### V. Disposition.

After considering all contentions raised by plaintiff Whalen, whether or not discussed above, we conclude the district court properly overruled plaintiff's motion for summary judgment and sustained defendants' motions for summary judgment. We therefore affirm the judgment of the district court on all issues.

**AFFIRMED.**