Michael L. WHALEN, Appellant,

v.

John E. CONNELLY, J. Edward Connelly Associates, Inc., Successor to Della III, Inc., President Casinos, Inc., and PRC-Iowa, Inc., Appellees.

No. 98–2070.

Supreme Court of Iowa.

Dec. 20, 2000.

As Amended on Denial of Rehearing Jan. 31, 2001.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.L.C., Des Moines, and Martha L. Shaff and Jean Dickson Feeney of Betty, Neuman & McMahon, Davenport, for appellant.

R. Richard Bittner and Jeffrey S. Bittner of Carlin, Hellstrom & Bittner, Davenport, and Lawrence C. Friedman and Fernando Bermudez of Thompson Coburn L.L.P., St. Louis, Missouri, for appellees.

SNELL, Justice.

This is the third time these parties have been to the Iowa Supreme Court. This appeal involves enforcing the judgment from the first decision made by this court. *Whalen v. Connelly*, 545 N.W.2d 284 (Iowa 1996) (*Whalen I*). The judgment of the district court on the appeal is reversed. The judgment of the district court on the cross-appeal is affirmed.

I. Factual Background and Proceedings

*Whalen I* involved a dispute over how much Michael L. Whalen should be paid for his share of the riverboat gambling partnership with the defendants, collectively referred to as The Connelly Group, L.P. (TCG). *Id.* at 290–92. The district court held in a declaratory judgment that Whalen was entitled only to what TCG had originally offered to tender to him in 1993—$61,531.45 and 55,904 shares of stock. *Id.* at 292. Whalen appealed the judgment to our court arguing he was entitled to a more favorable buyout under the partnership agreement. We affirmed the declaratory judgment on March 20, 1996. *Id.* at 292, 296.

While the appeal was pending, Whalen sought the money and shares from TCG. In a letter of demand, Whalen informed TCG no appeal was pending. TCG knew this to be incorrect because it had already received notice of the appeal. TCG refused to surrender the money and stock because of the pendency of the appeal. Whalen's appeal to this court in *Whalen I* was unsuccessful. By the time Whalen's stock was delivered to him in May 1996, it had depreciated substantially. For this reason, Whalen filed the present and third appeal, which we will refer to as *Whalen III*, claiming a division of TCG illegally converted his property under the Iowa tender law, Iowa Code chapter 538, by keeping it until the appeal was resolved.

In the interest of providing a complete background we mention Whalen's second appeal briefly. *Whalen v. Connelly*, 593 N.W.2d 147 (Iowa 1999) (*Whalen II*). This was a derivative claim. Whalen was again unsuccessful. *Whalen II* has no relation to the present facts or suit.

*Whalen III* revolves around Whalen's assertion that J. Edward Connelly Associates, Incorporated[1] and PRC-Iowa, Incorporated,[2] collectively referred to here as "Connelly," committed the tort of conver-

---

1. J. Edward Connelly Associates, Incorporated is a successor to Della III, Inc., which was a named party in *Whalen I* and *Whalen II*. Della III, Inc. was a former general partner of TCG.

2. The claims against defendants John E. Connelly individually and President Casinos, Inc.

sion by refusing to deliver the judicially determined buyout to Whalen pending his appeal in *Whalen I.* Connelly filed a counterclaim which charged Whalen with malicious prosecution for his suit in *Whalen I.* This appeal involves Whalen as the Appellant/Cross–Appellee and Connelly as the Appellee/Cross–Appellant.

### A. Whalen's Claim and the District Court's Disposition

Whalen argues that under the Iowa tender law Connelly should have honored his demand for the stock while the *Whalen I* appeal was pending. *See* Iowa Code §§ 538.4, .7 (1997). Whalen sought delivery of the stock on January 16, 1995. At that time, the stock's value was $9.50 per share. The stock's value plummeted to $2.37 per share by April 1, 1996. Because the stock depreciated after the time Whalen made his demand, which Connelly refused, Whalen claims Connelly committed the tort of conversion. Whalen seeks damages for this reduction in market value plus interest.

At the district court, Whalen filed a motion for partial summary judgment asking the court to find that as a matter of law the Iowa tender law applied, and that Connelly should have immediately paid Whalen upon his demand. Its failure constituted conversion. Whalen did not seek summary judgment on the issue of the amount of damages. Connelly filed its own motion for summary judgment on the conversion issue. The court denied Whalen's motion in favor of Connelly's resistance and granted Connelly's motion for summary judgment.

The district court found the appeal filed by Whalen prevented him from obtaining his property. It held the conversion claim unwarranted, as Whalen had placed ownership and value of the property in issue by filing an appeal. In his appeal in *Whal-*

*en I,* Whalen sought more money for his property interest and was less concerned with obtaining stock ownership. As such, the district court recognized: "Had [Whalen] been successful in his appeal, he may not have been entitled to <u>any</u> stock...." Therefore, Whalen was precluded from seeking satisfaction until he dismissed his appeal. The district court was persuaded that Whalen's appeal attacked the very judgment he was seeking to collect. Finally, the court concluded that the Iowa tender rule did not apply because it was dealing with a Delaware partnership.

### B. Connelly's Counterclaim and the District Court's Disposition

Connelly filed a counterclaim against Whalen alleging the *Whalen I* suit constituted malicious prosecution. Connelly argued that discovery documents showed Whalen knew his claim in *Whalen I* had no merit. To show the special damages Iowa requires in a malicious prosecution suit, Connelly produced its expenses totaling more than one million dollars to defend *Whalen I.*

Whalen made a motion for summary judgment against this counterclaim. He argued that the mere cost of the suit was not enough to show special damages. The district court granted this motion in favor of Whalen. It found Connelly could not show any special damages that would support a malicious prosecution suit. On appeal, Connelly alleges it has other injury, but it failed to plead the specifics of those injuries or develop them in detail through discovery.

### II. Scope and Standard of Review

The appeal and cross-appeal come to us from rulings granting summary judgment. We review a grant or denial of summary judgment for correction of errors at law. Iowa R.App. P. 4; *Whalen II,* 593 N.W.2d at 152. Summary judgment is proper

---

were dismissed for lack of personal jurisdiction. Only J. Edward Connelly Associates,

Inc. and PRC-Iowa, Inc. remain as defendants in this appeal.

when no material dispute exists. If reasonable minds could disagree, summary judgment is improper. *Dickerson v. Mertz*, 547 N.W.2d 208, 212 (Iowa 1996). As such, the court will affirm if the entire record including pleadings, discovery, and affidavits on file shows there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Whalen II*, 593 N.W.2d at 152.

Our determination involves deciding whether the district court correctly applied the law. *See Krause v. Krause*, 589 N.W.2d 721, 724 (Iowa 1999). Under this standard, we will review the grant of summary judgment on Connelly's motion against Whalen's conversion claim in a light most favorable to Whalen. We will review the grant of summary judgment on Whalen's motion against Connelly's malicious prosecution claim in the light most favorable to Connelly.

### III. Issues on Appeal

#### A. Conversion—Appeal

The issue presented on direct appeal is whether Whalen can successfully bring a conversion claim against Connelly for failing to turn over Whalen's property upon his demand resulting in a great depreciation of worth when (1) an appeal filed by Whalen was pending which placed the value and possession of the property in issue; (2) the Iowa tender law may require Connelly to turn the property over; but (3) Iowa law may not apply because Connelly is a Delaware partnership.

#### 1. Procedural Barriers

Connelly argues this claim is precluded by our decision in *Whalen I*. The applicable issue in *Whalen I* dealt with what Whalen was entitled to as a buyout from TCG. *Whalen I*, 545 N.W.2d at 292. That amount has been judicially decided. The issue here is whether Connelly violated the Iowa tender law, thereby committing conversion, when it refused to deliver the property demanded by Whalen during the pendency of the appeal.

■ Claim preclusion is generally implicated where there has been a full and fair opportunity to litigate the claim—the claim was litigated, or it could have been, but was not. *See Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 397 (Iowa 1988); *Tigges v. City of Ames*, 356 N.W.2d 503, 508 (Iowa 1984). "A second claim is likely to be considered precluded if the acts complained of, and the recovery demanded, are the same, or when the same evidence will support both actions." *Geneva Corp. Fin. v. G.B.E. Liquidation Corp.*, 598 N.W.2d 331, 334 (Iowa App. 1999) (citing *Riley v. Maloney*, 499 N.W.2d 18, 20 (Iowa 1993); *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 860 (Iowa 1990); *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 286 (Iowa 1976)). Moreover, claim preclusion is implicated when "the claim for relief litigated in the previous proceeding was the same as the claim of the present action." *Id.* (citing *West v. Wessels*, 534 N.W.2d 396, 398 (Iowa 1995)).

■ The present claim deals with property owed to Whalen and an alleged tort that arose *after* the commencement of *Whalen I*. The facts of the conversion are different from those presented in *Whalen I*. Whalen is not challenging the judgment in *Whalen I*. The tort of conversion could never have been made an issue in the earlier case. Whalen's conversion claim is not precluded by our disposition in *Whalen I*.

■ We likewise dispose of Connelly's allegation that Whalen is barred from bringing his conversion claim because of the doctrine of election of remedies. "We note that this doctrine is designed to prevent double recovery for a single injury, not to prevent recourse to alternative remedies." *Hartford-Carlisle Sav. Bank v. Van Zee*, 569 N.W.2d 386, 389 (Iowa 1997) (citing 25 Am.Jur.2d *Election of Remedies* § 2, at 763–64 (1996)). Further, "Iowa has

recognized this doctrine is not favored by the courts and will not be applied in the absence of evidence of substantial prejudice." *Id.* Whalen's conversion claim does not create a double recovery-type situation, nor can Connelly point to any prejudice because it was Connelly who chose to withhold the stock rather than deliver it when requested.

■ Connelly also argues that the Iowa tender law does not apply to his claim because Connelly is a Delaware corporation. The two partnership agreements at issue in *Whalen I* both contained choice of law provisions. *See* 59A Am.Jur.2d *Partnership* § 32, at 251 (1987) ("A *partnership agreement* may contain an effective choice-of-law provision designating the governing law under which *its* terms must be applied and construed . . . ." (emphasis added)). We considered Delaware law in both earlier appeals. *Whalen II*, 593 N.W.2d at 152–58; *Whalen I*, 545 N.W.2d at 291–93. In *Whalen I* and *Whalen II* we were interpreting the actual partnership agreement and determining liability based on the internal workings of the partnership. *Whalen I*, 545 N.W.2d at 291; *Whalen II*, 593 N.W.2d at 150. However, the present dispute has nothing to do with the agreements themselves, but rather, the procedure utilized in Iowa for collecting a judicially-determined debt while an appeal is pending. One legal authority has explained:

> Where the liability of a partnership or partner is predicated on a partnership act, like the . . . commission of a tort, questions of liability are governed by the law of the place where the act was done rather than by the law of the place where the partnership was organized.

59A Am.Jur.2d *Partnership* § 33, at 251; *see also Farmers' & Merchs.' Nat'l Bank v. Anderson*, 216 Iowa 988, 991–99, 250 N.W. 214, 216–19 (1933) (holding that contract disputes not related to the partnership's organization are governed by the law of the state where executed). Because this is a question of whether a tort was committed by Connelly and not a question of the intricate workings of the partnership, the state where the tort was committed should govern. Accordingly, we do not perceive any circumstance that would have us pass judgment on the partnership agreements or the internal organization of the partnership in the present suit. As such, Iowa law applies to this tort action.

2. Merits of Conversion—Iowa Tender Law

■ Under the Iowa tender statute: "A tender of the property, . . . discharges the maker from the contract, and the property becomes vested in the payee . . ., and the payee . . . may maintain an action therefore as in other cases." Iowa Code § 538.4. The statute further states:

> When the tender of money or property is not accepted by the party to whom it is made, the party making it may, if that party sees fit, retain it in possession; but if afterwards the party to whom the tender was made concludes to accept it and gives notice thereof to the other party, and the subject of the tender is not delivered to the accepting party within a reasonable time, the tender shall be of no effect.

*Id.* § 538.7. Whalen argues that when Connelly offered to buy Whalen out for $61,538.45 and 55,904 shares of stock in 1993 this created a tender and "the property [became] vested in [Whalen]." *Id.* § 538.4. When Whalen initially rejected this tender and sought a judicial determination, it was proper for Connelly to keep the property. *See id.* § 538.7. Later, when Whalen decided to accept the tender, and it was not delivered, the stock vested back to Connelly from Whalen, for purposes of bearing the risk of loss. *See id.* Because the initial tender by Connelly was then of no effect, Whalen argues Connelly bore the risk of decreased value. We agree.

■ Whalen seeks recovery under the theory of conversion. Whether enforcement of the Iowa tender statute is through the claim of conversion is an issue of first

impression. Whalen cites one legal authority in relation to tender and conversion: "Where the goods are withheld, the tenderee may maintain replevin or trover therefor as he may elect." 86 C.J.S. *Tender* § 45, at 449 (1997). Trover or conversion is described as "the wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Condon Auto Sales & Serv., Inc. v. Crick,* 604 N.W.2d 587, 593 (Iowa 1999).

▆ When tender is refused, the tenderer becomes a bailee, "and it is his duty as such to take care of the property" at the tenderee's expense. 86 C.J.S. *Tender* § 45, at 449. However, if the tenderer wrongfully withholds the property from its owner upon his demand, the tenderee no longer bears the risk. Iowa Code § 538.7. Accordingly, if the tenderer allows the goods to be damaged, "this will not affect the result that the debt is paid by the tenderer." 89 C.J.S. *Tender* § 45, at 449. Such a scenario can clearly be aligned with the tort of conversion. Although the effect of the tender is destroyed, the property still belongs to the tenderee, and the debt must be satisfied by the tenderer regardless that the value has diminished.

▆ The improper withholding and subsequent loss must be borne by the tenderer/bailee. This is true unless Connelly has a good faith reason for withholding the stock. *See Condon,* 604 N.W.2d at 593 ("Good faith by the defendant is a factor to consider in determining whether the interference amounts to conversion."); *McCray v. Carstensen,* 492 N.W.2d 444, 446 (Iowa App.1992) (" '[O]ne in possession of a chattel who is in reasonable doubt as to the right of a claimant to its immediate possession does not become a converter . . . .' " (quoting Restatement (Second) of Torts § 240(1), at 469 (1965))). Connelly admits that it owed Whalen at least as much as 55,904 shares, which it offered for tender in 1993. The district court reinforced this amount by declaratory judgment in *Whalen I.* Connelly has never disputed this judgment or claimed it owed Whalen less. In such a scenario, there can be no reasonable doubt that the number of shares of stock would be established at less by virtue of the appeal in *Whalen I.*

▆ Connelly argues in the alternative that it reasonably withheld the stock pending the appeal. In other words, Connelly asserts the appeal trumped the statute. The Iowa tender statute does not purport to limit its use to circumstances where no appeal is pending. *See* Iowa Code §§ 538.4, .7. Connelly argues it would somehow have been prejudiced in the appeal if it had honored Whalen's demand. We recognize that if Whalen had obtained the stock during the pendency of the appeal, as he demanded, that might have diminished or mooted the effect of his argument for more money in lieu of stock. That consequence, however, would fall on Whalen and provide no viable reason to Connelly for withholding the stock. Since Connelly never argued it owed less stock than offered in its 1993 tender, no good faith reason for withholding the stock has been shown. Consequently, when Connelly withheld the stock from Whalen, it bore the risk of loss. Connelly is liable to Whalen for damages of conversion. We reverse Connelly's summary judgment on this issue and direct the district court to grant Whalen's partial motion for summary judgment.

### B. Malicious Prosecution-Cross-Appeal

The issue presented on cross-appeal is whether Connelly has shown the special damages necessary for a malicious prosecution suit, or alternatively, whether the failure to show special damages should bar a party from bringing a malicious prosecution suit in these circumstances.

▆ We have stated there are six elements necessary to successfully charge an opponent with malicious prosecution.

The elements of malicious prosecution are as follows: (1) a previous prosecution; (2) investigation of that prosecu-

tion by the defendant; (3) termination of that prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the defendant for bringing the prosecution; and (6) damage to the plaintiff. This damage to the plaintiff must be for an arrest of the person, seizure of property or special injury—injury that would not ordinarily result in all similar cases involving such a claim.

*Employers Mut. Cas. Co. v. Cedar Rapids Television Co.,* 552 N.W.2d 639, 643 (Iowa 1996) (citations omitted). Connelly specifically fails the sixth requirement because incidental costs to defend against a lawsuit are not special damages.

 Connelly seeks a revision of the above rule to eliminate the special damages requirement or at least clarify the rule and allow an exception for cases such as this. Connelly points to evidence that Whalen purposefully concealed indicating he knew his lawsuit in *Whalen I* to be without merit. Connelly places great emphasis on the fact that Whalen is an educated man who intentionally filed a meritless lawsuit. Connelly suggests this makes Whalen's actions more egregious and minimizes the amount of special damages Connelly must show. Given this fact and the great expense to Connelly, Connelly argues this is an exceptional circumstance that provides the damage element necessary for a malicious prosecution suit.

Nevertheless, our precedent requires a showing of special injury which is not present here. *See, e.g., Employers Mut.,* 552 N.W.2d at 643. We are aware other authority no longer requires this element. Restatement (Second) of Torts §§ 674 cmt. e, at 455, 681 cmt. d, at 470 (1977). *But see* 52 Am.Jur.2d *Malicious Prosecution* §§ 10–11, at 192–95 (1970) (recognizing that the showing of a special injury is still a necessary element in many jurisdictions). However, we are not persuaded to amend our rule for this circumstance.

In the alternative, Connelly attempts to show it suffered special injury beyond the expense of litigation when Whalen's suit allegedly hindered its initial public offering by making it more expensive for Connelly to secure investment capital. We pass no judgment on whether this claim by Connelly would be sufficient to constitute special damages because Connelly failed to supply evidence of this injury. We affirm summary judgment in Whalen's favor on this issue.

### C. Conclusion

The district court erred when it granted summary judgment in favor of Connelly on Whalen's conversion claim. Under the Iowa tender law, Connelly's failure to deliver the stock within a reasonable time shifted the risk of loss to Connelly. Connelly is responsible for damages and unpaid interest arising from this conversion. We reverse and remand for a determination of loss of value and interest.

The district court correctly granted summary judgment in favor of Whalen on Connelly's counterclaim. Special damages beyond the cost of litigation are not proved to support a malicious prosecution suit. We affirm this determination.

**REVERSED ON APPEAL AND RE-MANDED FOR FURTHER PROCEED-INGS; AFFIRMED ON CROSS-AP-PEAL.**

McGIVERIN, S.J.,* participates in place of NEUMAN, J., who takes no part.

---

* Senior judge assigned by order pursuant to

Iowa Code section 602.9206 (1999).